IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

STEVEN GRAHAM,

       Plaintiff,

vs.                                   CASE NO. 1:12-cv-218-MP-GRJ

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying his application for disability insurance benefits

and supplemental security income ("SSI").  (Doc. 1).  The Commissioner has answered

(Doc. 8), and both parties have filed briefs outlining their respective positions.  (Docs.

11 and 12.)  For the reasons discussed below,  the Commissioner's decision is due to

be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On December 2, 2009, Plaintiff filed applications for disability insurance benefits

and supplemental security income, alleging a disability onset date of September 16,

2009.  (R. 14-64.)  Plaintiff's application was denied initially and upon reconsideration.

(R. 70-78.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted
for Michael J. Astrue as the defendant in this case.

and the ALJ conducted Plaintiff's administrative hearing on October 14, 2011.  (R. 38-65.)  The ALJ issued a decision unfavorable to Plaintiff on December 14, 2011.  (R. 9-23.)  Plaintiff's request for review of the hearing decision by the Appeals Council was denied on August 10, 2012.  (R. 1-6.)  Plaintiff then appealed to this Court.  (Doc. 1.)

## II. FINDINGS OF THE ALJ

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 16, 2009.  He found at Step 2 of the sequential evaluation that Plaintiff had the following severe impairments: coronary artery disease, hypertension, diabetes mellitus, cervical stenosis, hyperlipidemia and obesity.  (R. 14.) The ALJ found that Plaintiff's severe impairments or combination of impairments did not meet or medically equal the Commissioner's Listings, and concluded that Plaintiff had the residual functional capacity to perform light work with several postural and environmental limitations.  (R. 15.)  The ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff can perform, such as cashier (II), ticket seller, and housekeeping cleaner.  Accordingly, the ALJ concluded that Plaintiff was not disabled.  (R. 22-23.)

## III. ISSUES PRESENTED

The issues presented by Plaintiff on appeal are whether the ALJ erred by: (1) failing to obtain an updated medical expert opinion; (2) assigning great weight to the opinion of consultative physician Dr. Eftim Adhami; and, (3) failing to provide the vocational expert with a complete and accurate hypothetical.

## IV.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by

---

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[10]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[11]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from

---

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide

---

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[21]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## V.  SUMMARY OF THE RECORD

### A.  Medical History

In September 2009, Plaintiff had a heart attack.  Subsequent testing revealed severe aortic root dilation, and Plaintiff underwent surgery to repair his ascending aortic aneurysm/aortic root on November 18, 2009.  (R. 238-62, 319-50.)  Shortly after his surgery, Plaintiff established care at the Shands Coumadin Clinic, and regulation of his blood-thinner regimen to maintain therapeutic levels continued through the summer of 2010. (R. 238-95, 304-350.) In September 2010, Plaintiff established care with Dr. Diab at Eastside Community Practice, who also monitored his medications and chronic impairments of diabetes, hypertension, and hyperlipidemia. (R. 429-510.)

State agency physician Elin Ely opined on June 2, 2010, that Plaintiff could

---

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] *See id.*

perform light work.  (R. 296-303.)  State agency physician Nicolas Bancks also

concluded on October 13, 2010, that Plaintiff could perform light work, but with postural

and environmental limitations.  (R. 379-86.)

Dr. Eftim Adhami performed a consultative examination on September 11, 2010,

diagnosing obesity, onychomycosis of legs/feet, diabetes, hypertension, and heart

status post arctic root and arch replacement with aortic valve artificial placed.  Dr.

Adhami recommended additional testing to rule out congestive heart failure.  (R. 351-

56.)

Plaintiff experienced a stroke in May 2011, after experiencing left-sided

weakness, dizziness, and severe headache.  A transthoracic echocardiogram on May

13, 2011 indicated severe concentric left ventricular hypertrophy; normal left and right

ventricular systolic function; and aortic valve prosthesis (probably functioning normally

with mild aortic insufficiency) with ejection fraction of 55-60%.  (R. 387-428.)

Following his stroke, on June 9, 2011, Plaintiff saw Dr. Cook, a neurologist,

where Plaintiff reported that he was involved in outpatient physical therapy and had

slight weakness on the left side.  On physical examination, strength was equal 5/5;

cerebellar exam showed some decrease in rapid alternating movements on the left but

no past-pointing; gait and station were slightly slowed; and sensation was slightly

decreased on the left.  Dr. Cook's diagnoses were subacute stroke syndrome with total

occlusion of the internal carotid on the right; status post aortic valve replacement;

insulin-dependent diabetes; cervical radicular pain with MRI showing stenosis;

hypertension (controlled); hyperlipidemia; and chronic warfarin treatment.

A June 20, 2011 CT scan of Plaintiff's head revealed decreased cerebral blood flow within the right basal ganglia consistent with ischemia, and an occluded right internal carotid artery (ICA). An MRI of his brain indicated a foci of acute infarctions secondary to subacute thrombus within the intracranial portion of the right ICA. (R. 433.) Plaintiff complaints included memory loss, blurred vision, nausea, headaches, and left-sided weakness. (R. 434.) By June 27, 2011, it was noted that he was recovering well from his stroke and that his right ICA had partially re-canalized. (R. 431.)

At his July 26, 2011 follow up with Dr. Cook, Plaintiff complained of headaches, worsened muscle spasms, new onset of hand tremor, and generalized weakness. Dr. Cook's neurological exam findings remained unchanged. Dr. Cook increased Plaintiff's dosage of Zonergran (for headaches) and Flexeril (for cervical pain) and recommended continuing the diabetes regimen and anti-coagulation therapy in place. In August 2011, Plaintiff's echocardiogram and ejection fraction were okay and his stress test was normal. He continued to ambulate the a cane. At his September 2011 visit with Dr. Cook, Plaintiff complained of new episodes of sudden unresponsiveness that resolves in 1-2 minutes. Plaintiff reported that his headaches had somewhat reduced. Dr. Cook again increased the dosage of Plaintiff's headache medicine. (R. 513-52.)

## B. <u>Hearing Testimony</u>

Plaintiff was 41 years old at the time of the administrative hearing on October 14, 2011. He testified that he is unable to work because he gets short of breath easily, has headaches, "fades in and out," and is unable to move around much. Plaintiff testified

that he cannot walk very far and is able to lift 5-10 pounds. He lies down a few times during the day and sleeps off and on. He did not think he could sit for at least six hours a day. Plaintiff testified that he sometimes accompanies his mother to the store and tries to help her with things around the house, such as putting a load of laundry in the washing machine and watching his nephew. (R. 38-65.)

## VI. <u>Discussion</u>

Plaintiff argues that the ALJ erred by: (1) failing to obtain an updated medical expert opinion; (2) assigning great weight to the opinion of consultative physician Dr. Eftim Adhami; and, (3) failing to provide the vocational expert with a complete and accurate hypothetical. For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## A. The ALJ was not required to obtain an updated expert opinion

Plaintiff argues that the ALJ erred by not obtaining an updated expert opinion as to whether Plaintiff's impairments met or medically equalled Listing 4.10 (Aneurysm of Aorta or Major Branches). (Doc. 11.) To show that he met Listing 4.10, Plaintiff had to prove that he had an "[a]neurysm of aorta or major branches, due to any case (e.g., atherosclerosis, cystic medial necrosis, Marfan syndrome, trauma), demonstrated by appropriate medically acceptable imaging, with dissection not controlled by prescribed treatment (see 4.00H6)." Listing 4.10. In his opinion, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled Listing 4.10, noting that:

> [T]he medical evidence does not show that there has been an aneurysm ,
> demonstrated by appropriate medically acceptable imaging with dissection

not controlled by prescribed treatment. While the evidence shows that the claimant has complained of atypical chest pain, the evidence also shows that further diagnostic testing has not demonstrated the dissection has not been controlled by prescribed treatment. Moreover, there is no further interventional or diagnostic testing/treatment that has been recommended since his aortic replacement. Lastly, there is no indication [of] heart failure, renal failure or neurological complications (particularly in light of relatively benign neurological and diagnostic findings).

(R. 15.) Plaintiff contends that because the medical expert evidence the ALJ relied upon was obtained in 2010–prior to Plaintiff's May 2011 stroke–the ALJ should have obtained an updated medical expert opinion in order to determine whether Plaintiff met or equaled Listing 4.01. (Doc. 11.)

The Commissioner decides the ultimate legal question of whether an impairment is met or equaled by a Listing. SSR 96-6p, 1996 WL 374180, *3 (S.S.A. July 2, 1996); 20 C.F.R. § § 416.926, 404.1526. While the ALJ is not bound the finding of a medical expert as to whether a plaintiff's impairment meets or equals a listing, the ALJ must receive evidence and give appropriate weight to these opinions. *See, e.g., Wilkinson on Behalf of Wilkinson v. Bowen,* 847 F. 2d 660, 663 (11th Cir. 1987). Social Security Regulation 96-6p requires that an ALJ obtain an updated medical expert opinion "when additional medical evidence is received that in the opinion of the [ALJ] . . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." Accordingly, "the need for an updated medical opinion is subject to whether the additional evidence, in the opinion of the ALJ, would have changed the consulting doctor's findings." *Brunson v. Astrue,* 850 F. Supp. 2d 1293, 1307 (M.D. Fla. 2011) (citing *Glenn v. Astrue,* 2009 WL 3063335, at *2-3 (M.D. Ala. Sept. 22, 2009)).

It is clear from his opinion that the ALJ reviewed and considered the medical records subsequent to Plaintiff's stroke in May 2011 and found them insufficient to warrant an updated medical opinion. It is also clear from the ALJ's written opinion that the additional medical evidence would not have changed the findings of state agency experts that Plaintiff's impairments did not meet or equal a Listing.[22]

Here, there was no "demonstrat[ion] by appropriate medically acceptable imaging, with dissection not controlled by prescribed treatment" in the medical records after Plaintiff's stroke. The ALJ reasonably concluded that the evidence of Plaintiff's condition and symptoms after the May 2011 stroke–where he generally recovered well but primarily complained of new headaches and left-sided weakness–would not have changed previous findings regarding Listing 4.10. Thus, because the ALJ was not of the opinion that the additional medical evidence might change those findings, he was not required to obtain an updated medical expert opinion. The Court finds that the ALJ's determination that Plaintiff did not meet or equal Listing 4.10 is supported by substantial evidence.[23]

## B. The ALJ did not err in assigning great weight to Dr. Adhami's opinion

Next, Plaintiff argues that the ALJ erred by assigning great weight to the consultative physical examination findings by Dr. Adhami in September 2010–prior to

---

[22] SSR 96-6p provides that the signature of a state agency medical consultant on a Disability Determination and Transmittal Form or Physical Residual Functional Capacity Form ensures that consideration "has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." SSR 96-6p, 1996 WL 374180, *3 (S.S.A. July 2, 1996). Plaintiff's claims were denied initially and upon reconsideration, and two state agency medical experts opined that Plaintiff could perform light work. Accordingly, it is implicit in their findings that Plaintiff did not meet or equal a Listing.

[23] *See, e.g., Glenn v. Astrue,* 2009 WL 306335 (M.D. Ala. Sept. 22, 2009) (finding no error where ALJ was not of the opinion that additional medical evidence would have changed medical expert's findings).

Plaintiff's stroke of May 2011. (Doc. 11.) During his physical examination, Dr. Adhami noted, among other things, that Plaintiff's muscle strength was 5/5 in all muscles; his ability to pick small objects and button clothes is preserved; he had mild swelling of the lower legs; his walk is normal; and he does not use any assistive devices. (R. 356.) Dr. Adhami's report did not contain any opinions related to disability or the Listings, but instead included a diagnosis of Plaintiff's conditions, noted that he has mild swelling of the feet and fatigue, and recommended additional testing to rule out congestive heart failure. (R. 356.)

Plaintiff argues that it was fundamental error for the ALJ to attribute great weight to Dr. Adhami's exam findings where they were not based on the entire medical record and did not contemplate his subsequent stroke and resulting functional limitations. The ALJ is not bound by a particular expert's opinion on the determinative issue of RFC, but rather the ALJ must consider them and give them appropriate weight in determining a Plaintiff's RFC. Here, the ALJ gave Dr. Adhami's findings on examination great weight, but also determined the RFC in light of all of the evidence in the record, including medical evidence regarding Plaintiff's May 2011 stroke and subsequent treatment. As the ALJ pointed out in his opinion, Plaintiff's treatment was "fairly routine and unremarkable." (R. 21.) No further intervention was recommended after the May 2011 stroke.

The ALJ also determined–and Plaintiff does not challenge–that Plaintiff's statements concerning the intensity, persistent, and limiting effects of his symptoms was not credible to the extent they were inconsistent with the RFC. (R. 20.) Specifically, the ALJ found that Plaintiff's complaints that his shortness of breath is

disabling was not supported by the evidence, especially where diagnostic testing

showed his ejection fraction was 55-60%.[24]  The ALJ also found that the objective

evidence does not support Plaintiff's complaints that his headaches are disabling, such

as benign neurological findings and no change in medication (only dosage).  The ALJ

concluded that Plaintiff's headache symptoms were controlled with medications.  (R.

21.)

Accordingly, for these reasons, the Court concludes that the ALJ did not err in

his evaluation of Plaintiff's RFC.

## C.  The hypothetical to the VE was complete

Finally, Plaintiff argues that because  the ALJ's hypothetical to the VE was based

on the RFC opinions obtained in 2010 (because the ALJ afforded some weight to RFC

opinions issued in June and October 2010), the hypothetical was incomplete because it

did not account for Plaintiff's May 2011 stroke.  (Doc. 11.)  Plaintiff argues that the

hypothetical should have included Plaintiff's post-stroke complaints of left-sided

weakness at 4/5 muscle strength; headaches, "mental freezing"/unresponsiveness, and

need for a walker and cane.  (*Id.*, citing R. 431, 451, 514-19.)  Plaintiff contends that

although the ALJ did discuss Plaintiff's stroke and related symptoms, he did not make

any findings regarding these impairments at Step Two, and therefore it would be

speculative to assume that the ALJ took into account these post-stroke symptoms.

Plaintiff's argument here is essentially an attack on the ALJ's determination of

---

[24]Ejection fraction measures cardiac function.  Normal heart function is indicated by ejection fraction of 50% or above.  2 Attorneys Medical Deskbook §24:3.

Plaintiff's RFC. Plaintiff's argument fails because the ALJ's RFC is supported by substantial evidence, as discussed at length in the previous section.

Furthermore, it is clear from the ALJ's opinion that he considered Plaintiff's post-stroke symptoms. The ALJ considered Plaintiff's complaints at the hearing and discussed at length the medical records regarding Plaintiff's stroke and subsequent treatment. The ALJ noted that Plaintiff's "treatment has been fairly routine and unremarkable." (R. 21.) The ALJ found that Plaintiff's headaches were controlled with medication, and the objective evidence does not support the severity of his complaints, especially "in light of benign neurological findings upon consultative exam." (*Id.*)

Accordingly, because the ALJ's hypothetical to the VE accurately reflected the ALJ's determination of Plaintiff's RFC, and because the RFC is supported by substantial evidence, the hypothetical was sufficient.

## VII. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida this 14th day of November 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**